Speak, J.
In the case of Van Wert v. Brown, a preliminary question is made by the defendant in error as to the jurisdiction of this court to entertain the petition in error on the part of the village. The learned counsel objects to the jurisdiction of this court because, as he insists, the prosecution before the mayor was a criminal case, and such case can be reviewed in this court, after a judgment of a reversal of the conviction only by and upon a bill of exceptions filed by the prosecuting attorney, and in such case, for the purpose only of settling the law for other cases. In support of this claim he cites thei following portion of section 7356, Revised Statutes (2 S. & B. Revised Statutes, 2123): “ In any criminal case, including a conviction for a violation of an ordinance of a municipal corporation, the judgment or final order of a court or officer inferior to the common pleas court may be reviewed in the common pleas court; a judgment or final order of any court or officer inferior to the circuit court may be reviewed in the circuit court; and a judgment or final order of the circuit court or the common'pleas court in cases of conviction of a felony or a misdemeanor, and the judgment of the circuit court in any other case involving the constitutionality or construction of a statute, may be reviewed by the supreme court.” Counsel insists that it is only in case of a conviction for a violation of an ordinance that this court- may review; that as long as the conviction is affirmed the accused may *480 carry his case to a higher court, but, so soon as that judgment of conviction is reversed, then it is a case of acquittal, and the statute does not authorize such cases to be carried up.
We think the point not well taken. It is true that, in two instances, Barney v. Cleveland, 84 Ohio St. 599, and Village of Shelby v. Boenau, 40 Ohio St. 253, this court has, inadvertently as we think, spoken of such offenses as violations of criminal law. But they are not, strictly speaking, crimes, nor are the proceedings, criminal proceedings; they are quasi criminal only. The offender does not offend against the dignity of the state; his offense is only against the municipal corporation whose ordinance he has violated. He is prosecuted, not by the state’s prosecuting attorney, but by the solicitor of the village or city, or by a city prosecutor in the police court. The municipal corporation is liable for costs in case of acquittal; the state is not. In practice, the distinction has been recognized at least as far back as Markle v. Town Council of Akron, 14 Ohio 587. In that case the plaintiff in error had been convicted of a violation of a town ordinance prohibiting, under a penalty, the vending and retailing by persons not licensed tavern-keepers or physicians, of ardent spirits. It was held that the ordinance was valid, and that, for a violation, the corporation might declare in debt. Wood, C. J., in the opinion, uses this language: “It is true, for offenses strictly criminal or infamous, punishment can only be inflicted through the medium of an indictment or presentment of the grand jury. . . . There are, however, many offenses, made so by statute, which are but quasi criminal, and where the legislature may direct the mode of redress, untrammelled by this constitutional provision .... Long acquiescence in these enactments goes far to show the construction which has been placed by all on the constitution, and that there may be many offenses, though decidedly immoral and mischievous in their tendencies, that are not crimes, but at most only quasi criminal. Of such, jurisdiction may be given to a justice of the peace, or the mayor of an incorporated town.”
That this has been the understanding of our law-makers, *481 the general current of our legislation attests. The legal machinery for the trial and punishment of violations of ordinances has been provided in the municipal, and not in the criminal, code. Provision for reviewing the judgments of the police courts, and of mayors, in such cases, by the court of common pleas, are found in acts regulating municipal corporations, and not elsewhere, until the enactment of the codified laws known as the Revised Statutes, which went into effect January 1, 1880, when such review was, for purposes of brevity, provided for by section 7356. And in this section the distinction is recognized. The language is: “In any criminal case, including a conviction for a violation of an ordinance of a municipal corporation,” etc. Had such violation been regarded by the legislature as a crime, the same would have been sufficiently covered by the words of the first clause, and that which follows would be superfluous.
Section 7356 does not prevent this court from reviewing the case in question. The language itself leads to the opposite conclusion. It will be noted that provision for jurisdiction of this court in section 7356, as amended February 7, 1885, is in these words: “ and a judgment or final order of the circuit court or the common pleas court in cases of conviction of a felony or misdemeanor, and the judgment of the circuit court in any other ease involving the constitutionality or construction of a statute, may be reviewed by the Supreme Court.” Offenses against the state are divided into felonies and misdemeanors — the former being such as are punishable by death or imprisonment in the penitentiary, and all others, misdemeanors. But to be either, the offense must be against the state. A violation of an ordinance not being an offense against the state, does not come within either class. It follows that in the language above quoted, where the words used are “ cases of conviction of a felony or misdemeanor,” violations of ordinances are necessarily excluded. And, as the first clause of the section permits cases of conviction for violation of ordinances to be reviewed in the common pleas, and then, by the next clause, in the circuit court, and the following clause gives this court jurisdiction to review all judgments *482 of the circuit court in any case involving the constitutionality or construction of a statute, which, as we have found, need not be a case of felony or misdemeanor, it follows clearly that the section does confer upon this court jurisdiction to review the judgment of the circuit court in a case where the charge is a violation of an ordinance, without reference to the question whether it is a case of conviction or not, only so that it involves the constitutionality or construction of a statute. This conclusion is strengthened by the consideration that if the other construction be accepted, the constitutionality and meaning of statutes upon which ordinances are founded, would be finally disposed of by the circuit court where that court should hold such statutes invalid, or give to them such construction as to destroy their efficacy. It has not heretofore been, and we think, is not now, the policy of the state to thus limit the jurisdiction of this court.
The constitutionality of the Dow law, as to its general features, was maintained in Adler v. Whitbeck, 44 Ohio St. 589; and in Anderson v. Brewster, same volume, 576, and in each case it was held to be a tax law, and not a license law. In Gordon v. The State, 46 Ohio St. 607, the Township Local Option act was attacked as unconstitutional on the ground that the act is of a general nature, and has not uniform operation throughout the state; also, that it is a delegation of powers to the people, and that it is impossible of execution because it does not 'provide adequate means for determining whether the signatures on the petition to the township trustees for an election are genuine, and, whether the signers constitute one fourth of the qualified electors of the township, and that there was no provision for the filing and preservation of the record. In all these respects the act was held by the court not to be obnoxious to the objection urged, and to be valid; so that, we are notin this inquiry, concerned with any of these questions.
The principal question sought to be raised by the motions in the case of Van Wert v. Brown, was, whether or not the eleventh section of the act know as the Dow law, (Sec. 8092, 18, 2 S. & B. Revised Statutes, 2730,) is impossible of execu *483 fcion, and hence void, because it does not provide how and out of what fund a dealer in liquors within a municipal corporation, who is required to discontinue business because of a prohibitory ordinance, shall be paid his ratable proportion of the tax.for the unexpired portion of the year; and, in the case of the State v. Rouch, the same question, as applied to section four of the act known as the Township Local Option act (2 S. & B. Revised Statutes, 2732), was sought to be raised by the demurrer to the indictment.
The portion of section eleven of the Dow law which is in review is as follows: “ Any municipal corporation shall have full power to regulate, restrain and prohibit ale, beer and porter houses, and other places where intoxicating liquors are sold at retail for any purpose or in any quantity other than as provided for in section eight of this act * * * But if any municipal corporation shall prohibit ale, beer and porter houses, or other places where intoxicating liquors are sold within the limits of such corporation, a ratable proportion of the tax paid by the proprietors thereof for the unexpired portion of the year shall be returned to such proprietors.”
Section four of the township local option act reads as follows : “In any township where the majority of the votes cast at such election shall be ‘ against the sale,’ and a dealer in intoxicating liquors who has paid the special tax shall, by reason of said vote, discontinue his business, a ratable proportion of said tax paid by such dealer in intoxicating liquors for the unexpired portion of the year shall be returned to such dealer.” And in each act penalties are affixed to the selling of liquor contrary to the inhibition prescribed.
There may be two classes of dealers affected by the passage of the prohibitory ordinance, or by prohibitory township action, viz.: those who, having been engaged in the business prior to the passage of the ordinance, or to the taking effect of the vote “ against the sale ” by the electors of the township, have paid the tax authorized by the act, and those who may engage in it subsequent thereto. It is apparent that a dealer, in order to be affected by the refunding features of either act, must have not only been engaged in the business, but *484 he must have paid the tax. If he does not come within this clause it is no matter of concern to him whether or not proper provision'has been made for the benefit of other dealers who do not come within it. The whole act would not be held invalid simply because it could not legally.be applied to all the classes of persons apparently coming within its terms. It is well settled that where, by the terms of a statute, several classes of persons are apparently included within its operation, and, as to some of them, its enforcement would render the act unconstitutional, and as to others not, the act will not, for that reason, be declared’unconstitutional, but it will be presumed that the legislative intent was to apply the statute to the latter class only. This principle is illustrated in Hirn v. The State, 1 Ohio St. 15. The defendant had been indicted for violation of the act of March 12, 1851, which made it an offence to sell spirituous liquors to be drank in the place where sold. The act repealed all laws licensing the sale of spirituous liquors. Him pleaded specially that before the enactment of the law he had obtained from the court of common pleas, under the act of June 1, 1831, a license to keep tavern, with privilege of retailing liquor, and that the sale complained of was at his tavern while his license was in full force. This court held that the act of March, 1851, repealed the act of June, 1831, so far as it conferred authority to grant licenses to sell liquor in future, but did not revoke outstanding licenses, and so sustained the plea. It is illustrated, too, by the cases of State v. Frame, and Benner v. Bauder, 39 Ohio St. 399. The act under review was the statute known as the Scott law, the second section of which provided that the assessments for taxes upon the business of trafficking in intoxicating liquors “shall attach and operate as a lien upon the real property on and in which the business is conducted as of the fourth Monday of April, each year.” It was objected that the law was invalid because, by the second section, the obligation of contracts of lease entered into before its passage, and still subsisting, was impaired. The court held the law to be constitutional and valid, but held also that the second section *485 did not operate where the business was conducted by a tenant for an unexpired term under a lease executed before the passage of the statute. It is illustrated, also, by the case of Anderson v. Brewster, supra. The court held that under the second section “ a valid lien is created upon the real property, when the tenant holds under a lease, written or parol, made after the passage of the statute,” leaving it to be plainly implied that had the lease been executed prior to the passage of the act the lien would not have attached; in other words, that the lien feature of the Dow law did not apply to premises so leased.
From this principle it would follow that if a dealer who was in the business at the time the prohibitory restriction took effect, and who had paid his tax, and the time covered had not expired, should be prosecuted, and a defence that the law, as applied to him was incapable of execution and therefore void, should be sustained, neither the statute nor the ordinance would be necessarily held invalid, but their operation simply restricted to the class to whom their provisions might legally apply. But the records before us do not show such a case. .It nowhere appears that either Brown or Rouch had ever paid the tax. For this reason, if for no other, the motions in the one case were properly overruled, and, for like reason the demurrer to the indictment in the other case was improperly sustained.
But are either of the sections so indefinite as to be impossible of execution as respects a dealer who had paid the tax and the time for which he had paid had not expired at the time the prohibitory restrictions took effect ?
In giving construction to a statute all its provisions must be considered together. We must endeavor to get at the legislative intent by a consideration of all that has been said in the law, and not content ourselves with partial views, by selecting isolated passages, and holding them alone up to criticism. What is the whole scheme of the law? What object did the legislature intend to accomplish ? Clearly it is to provide against the evils resulting from the sale of intoxicating liquors by taxing the traffic, and, in a measure, *486 prohibiting it. The amount of tax is fixed at a certain sum per year, beginning and ending at given dates. The taxing in this manner implied that some persons might want to begin the business after the beginning of the taxing year, and some dealers, who had paid the tax, might want to discontinue the business before the close of the year, and the authority to prohibit carried with it the idea that some . dealers who had paid might be compelled to discontinue before the time for which they had paid, had expired. These exigencies would call for apportioning the amount of tax to the actual time the dealer would be engaged in the business, and for a refunding of a - portion of the tax actually paid. Hence, we find the following provision, being section three of the Dow law:
“ That when any such business shall be commenced in any year after the fourth Monday of May, said assessment shall be proportionate in amount to tlje remainder of the assessment year, except that it shall be in no case less than twenty-five dollars, and the same shall attach and operate as a lien, as aforesaid, at the date of, and be paid within ten days after such commencement; and whenever any person, corporation or co-partnership, engaged in such business, who has been assessed as aforesaid, and who has paid or is charged upon the tax duplicate with the full amount of said assessment, discontinues such business, the county auditor, upon being satisfied of that fact, shall issue to such person, corporation or co-partnership a refunding order for a proportionate amount of said assessment, except that it shall be in no case less than fifty dollars.”
It will be noted that this section provides the machinerjr for refunding. It is to be done by the county auditor, by means of a refunding order, issued, however, only when satisfied that the person, etc., has discontinued the business. The officer designated, and the mode, is a general provision; the persons who may have, under the terms of this section, the refunding order, are, those only who voluntarily quit the business, while, by section eleven, dealers who have paid the tax, and are compelled to quit by reason of a prohibitory *487 ordinance may receive a ratable proportion of the tax paid for the unexpired portion of the year. To this amount no limit is fixed; it may be nine tenths, or one tenth, or any portion. It is true that this section does not direct in what way, or by whom, the ratable proportion shall be returned. But the dealer is of the same class, so far as the payment of the tax is concerned, as those for whom the refunder is provided in section three. Each paid his money by virtue of the same .provision of the same law, and by reason of conducting the same business. Each paid to the same officer, to wit: the county treasurer. The disbursement by that officer of the money received from one was precisely in the same manner as that received from the other. The policy of the law is to refund where the business has been discontinued. The only officer authorized by law to draw the order by which the proportionate amount can be obtained is the one named in section three, to wit: the auditor. What more natural, then, than to conclude, that the intent of this law is that all dealers entitled to have any ratable portion of the tax refunded may go to the auditor, who, upon being satisfied that the dealer has discontinued the business, will draw the proper refunding order ?
The same meaning applies to section four of the Township Local Option act. The provision is similar, as to a return of a ratable portion of the tax paid, to that of section eleven of the Dow law. The two acts are in pari materia. Their titles and their subject matter show that they relate to the same subject. One spirit and policy pervade both statutes, and the two were intended to be consistent and harmonious. The refunder provided for,- is intended to be carried out by one and the same officer, and in one and the same way.
But it is insisted that under section eleven the right to have a prohibitory ordinance is coupled with a condition precedent, viz.: to refund, and the right to prohibit cannot be exercised while the right to refund is delayed for the collection of money wherewith to refund. It is urged that the money paid by dealers in any municipality is distributed to the poor fund of the county, to the municipality, and to the general *488 revenue of the state, and that it becomes the duty of the county treasurer, upon his settlement with the county auditor on the 15th of February, and the 10th of August of each year, to at once disburse and pay over those funds, so that, during much of the year, there could not be any fund out of which the refunding order could be paid, and the prohibitory ordinance would prevent any fund created by the law from again accumulating in the treasury; and that it would be unlawful for the auditor to draw an order except upon funds created by assessments under this law. So that, there is no fund out of which the dealer who discontinues could be reimbursed, and hence no refunding order could issue, and the prohibitory feature of the Dow law is impossible of execution, and therefore void.
In support of the claim that it would be unlawful for the auditor to draw an order except upon the precise fund created by the assessments, section 1038, Revised Statutes, is cited, and it is insisted that the terms of that section control the matter of refunding under the Dow law because both statutes treat of refunding assessments. To maintain this proposition it must appear that the term assessment, “applies to the same subject in each act.” Is this the fact ? In section 1038, it is provided that the county auditor shall, from time to time, correct all • errors which he discovers in the tax list and duplicate, either in the name of the person charged with taxes or assessments, the description of lands or other property, etc. And when the auditor is satisfied after having delivered the duplicate to the county treasurer for collection, that any tax or assessment thereon, or any part thereof, has been erroneously charged, he may give the person charged therewith a certificate to that effect to be presented to said treasurer, who shall deduct the amount from said tax or assessments; and if, at any time, the auditor discovers that any erroneous taxes or assessments have been charged and collected in previous years, he shall call the attention of the commissioners to it, and if they find it to be the fact, they shall order him to draw his warrant on the treasurer in favor of the person so having paid, and the treasurer “shall pay the same out of any *489 surplus or unexpended funds in the county treasury.” Then, at the next annual settlement with the auditor of state, the county auditor shall deduct from the amount of taxes appearing due the state, the amount of such refunded taxes which had before been paid into the state treasury. The refunding may go back five years, but not farther. Then follows, the provision relied upon, to wit: “ but no assessment shall be so returned except from the fund or funds created in whole, or in part, by such erroneous assessment.”
It will be noted that this section deals with taxes and with assessments as distinct and different charges upon property. The one is a burden imposed ordinarily for purposes of revenue only; the other is a burden imposed for purposes of local improvement, as ditching, sewering, paving of streets, and the like. Having this in mind, the true signification of the limitation as to the fund from which return may be made, becomes apparent. No limit whatever is placed upon the funds from which taxes erroneously levied may be refunded. The limitation is confined to the return of assessments errone ously imposed and collected. The assessment being for local benefit, it is deemed proper to confine the return of any moneys erroneously collected for that purpose to the fund created by the assessment, but taxes, having been imposed for general revenue purposes, any unexpended funds in the treasury may be drawn upon to refund taxes erroneously levied and collected.
It is true that the burden imposed by the Dow law upon the traffic in intoxicating liquors, is, in some of the sections, termed an “ assessment,” but the word is there used as synonymous with tax, and is widely different, in meaning, from the same term as found in section 1038. Indeed, in section eleven, the word “ tax ” is used. “ This is an assessment in the form and nature of a tax,” says Minshall, J., in Adler v. Whitbeck, supra, and it is so treated throughout in that case, and in all the decisions of this court relating to that law.
From this it is clear that there is no force in the point that section 1038 requires that the refund of taxes provided for by the Dow law must be confined to the exact fund created *490 by tbe collection of the tax. The plan of refunding taxes, indicated by the section, may possibly give some light to auditors as to the general policy of the state in regard to the subject, but the section cannot have any controlling or probative force in determining the question we have here. For another reason the section is not applicable. Section 1088, by its terms, applies, and applies only, to taxes erroneously assessed and paid. Taxes under the Dow law are not taxes erroneously assessed and paid.
The contention that the right of the municipal corporation to pass a prohibitory ordinance depends upon the first making provision for refunding to dealers who discontinue, is wholly untenable. If the law were a license law, and not a tax law, there might be force in the proposition. The tenor of the language of the law itself forbids the implication that provision for refunder is a condition precedent. . The first thing to be done is the passage of the ordinance. No step looking to a refund of tax can possibly precede that. Next, the dealer must stop the business. Not until he has done that, and has satisfied the auditor that the business has been actually discontinued, is he entitled to a refunding order, and then its payment may not be immediate. Nor is this unreasonable. The dealer has no vested right in the business. Any who paid since the passage of the act did so with full knowledge that, by the action of a municipality, or a township, he might be compelled to discontinue the business, and that then, and not before, he is entitled to a refunder under the terms of the law. In other words, such dealer becomes a creditor to the amount of his ratable proportion. It seems to be assumed that this is a hardship. Compared with citizens in other lines of business, or with those who are compelled to give their services to the state, it is not so.. Familiar instances readily come to mind. The farmer, or other owner of live stock, is assessed upon it as of the day preceding the second Monday of April. It goes upon the tax duplicate as of that date, and taxes are imposed upon it. The stock may be taken off by disease before the duplicate even is made up, and yet no abatement is made in the tax. There *491 is no possible mode of correction before payment, or of refunder after. Nor can the owner refuse to pay the tax although the lost property may have been relied upon for his only means of carrying on business. Again, jurors, and witnesses in criminal cases, cannot refuse to obey the law which requires them to attend and serve, or testify, on the ground that the only provision for paying their fees, is, that they shall be paid out of the county treasury first being certified to tiie county auditor by the clerk of the court. Such persons must give their services, and incur expense, for quite moderate compensation, and then take the chance of the treasury having funds from which fees can be paid on presentation of the auditor’s warrant. It has been no uncommon occurrence, in some of the counties of the state, for warrants in favor of witnesses to find an empty treasury, and remain dishonored for weeks, and sometimes months. Many other instances might be cited.
We think there need be no embarrassment or difficulty about the character of the order to be drawn by the auditor. The statute provides that that officer, upon being satisfied that the dealer has discontinued business, shall issue to such dealer a refunding order. It does not direct what particular fund or funds the order shall be drawn upon. In such case it would he lawful to draw on the general fund. Such was the holding in Zimmerman v. Canfield, 42 Ohio St. 469. An order so drawn would at least he a valid order. Whether it has been the custom of auditors to draw these orders without designating any fund, or, on the general fund, or on the poor fund, or proportionately upon several funds, or, where drawn without designating any, for the treasurer to pay partly from several funds, we are not concerned to inquire. Equally unimportant is it to the present question what method, if any, the auditors adopt in making good a fund thus drawn upon, when overdrawn, if they are made good, or, in adjusting their accounts with other officers. We are not called upon, in a case like the present, to criticise the system followed, to direct what system should be adopted, or with the question whether or not the holder of the order' *492 procures immediate payment of it. It is enough to know, that provision has been made for the return of the tax for the unexpired portion of the year, and if it results in the holder of the auditor’s order having to wait for his money, it is but what he must be held to have contemplated, and cannot, in any wise, interfere with the operation of the prohibitory features of the law. That the phraseology'of these acts, in the particulars named, might have been made more definite and certain, may be conceded. But it cannot be presumed that the legislature intended to fail to provide a reasonable mode by which the refunder contemplated, .may be made, and, as held in Cochran v. Loring, 17 Ohio 409, “ though a law is imperfect in its details it is not void unless it is so imperfect as to render it impossible to execute.” As to these laws we see no difficulty in their execution, upon the terms of the acts themselves. Nor is it pretended that there has developed any practical difficulty in any county in the state, on the part of either dealer or officer, in understanding this feature of the law. On the contrary, the operation of the refunding features, has, in practice, worked easily, and without embarrassment. No single instance has been recalled, by counsel or court, where any dealer who has discontinued the business has failed to receive a prompt return of the ratable proportion, and to now sustain the objections urged, would be to set aside solemn acts of the legislature upon a barren ideality.
Other objections raised by the defendant in error in the case of Van Wert v. Brown, were, we think, correctly determined by the circuit court, and need not be discussed here. But that court erred in reversing the judgment of the court of common pleas, and the mayor, on the grounds herein stated, and for that

The judgment of the circuit court is reversed, and that of the lower courts affirmed.

In the case of State v. Rouch, the court of common pleas erred in sustaining the demurrer to the indictment, and

The exceptions of the prosecuting attorney are sustained.